(156 App. Div. 372.)

### FOLLERT v. ERIKSON et al.

(Supreme Court, Appellate Division, Second Department. April 30, 1913.)

1. DEATH (§ 103*)—ACTIONS—JURY QUESTION.

 Evidence in an action for the death of a child 2½ years old by the falling of a sand bank from which the employés of defendant city had been taking sand *held* to make it a jury question whether defendant was negligent in creating a dangerous condition.

 [Ed. Note.—For other cases, see Death, Cent. Dig. § 141; Dec. Dig. § 103.*]

2. DEATH (§ 103*)—ACTION—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

 Evidence in an action for the death of a child 2½ years old by the falling of a sand bank from which the employés of defendant city had been taking sand *held* to make it a jury question whether the child's parent was guilty of contributory negligence.

 [Ed. Note.—For other cases, see Death, Cent. Dig. § 141; Dec. Dig. § 103.*]

 Jenks, P. J., and Burr, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Anton Follert, as administrator of Anton Follert, deceased, against John Erikson and the City of New York. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

See, also, 140 N. Y. Supp. 858.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and STAPLETON, JJ.

Martin S. Lynch, of New York City, for appellant.

James D. Bell, of Brooklyn (Frank Julian Price, of Brooklyn, on the brief), for respondents.

THOMAS, J. The plaintiff's child, 2½ years old, in company with his sister, at the time about 13 years of age, was killed by the falling of a bank where the servants of the defendant city were and for some considerable time had been taking sand, although such taking was without the authority of the owner. Indeed, the attorney for the city stated upon the trial that the sand was stolen. The testimony of the sister shows what happened at the time of the accident, and it is undisputed that the lot was one commonly used as a playground for children, and that the persons taking the sand from the place knew this. The pit was back from the street from 40 to 60 feet, with a width from 40 to 45 feet and a height estimated from 6 to 10 feet. The custom was to dig under the bank and then cut the bank down. As another witness put it: "I dug down, and then after the sand was dug out the top would fall." It is apparent that it had been excavated to the breaking point, although the fall did not occur while the men were on the ground. But the city's servant shortly before was working at that place, and indeed took sand from there that very morning and left the bank in a condition liable to fall, although he knew, as he says, the children "would come there with their little shovels after sand. Those children, they run all sorts—from children up to about 10 or 11 years old, some 6 months older." For the purposes of this decision it is unimportant that the city was a trespasser. It had been taking sand from this place for some considerable time, and was liable for the taking to the owner. So the situation is that the city, knowing that little children customarily played in this sand bank, pursued a method of digging until the bank was ready to fall and followed such practice on the day in question, but left the bank practically at the falling point, with the result that while delivering sand the bank fell. The respondent relies upon Newdoll v. Young, 80 Hun, 364, 30 N. Y. Supp. 84, where the owner and a person using a sand pit were sued for the death of a child who entered it during their absence and played under the overhanging bank. It was held that the owner was not liable, and that Thatcher, who used the pit as did others, neither made the excavation nor controlled it.

[1] In the case at bar the defendant assumed control and created dangerous conditions, and left it, knowing that the excavation had reached the stage where the bank was liable to fall, and that, if it fell, it would be likely to injure the numerous little children playing under it. In

this view the defendant's negligence should have been submitted to the jury.

[2] Th question of the contributory negligence should not be determined by the court, as the child was in charge of a person of sufficient judgment so as to permit the child to be abroad, and it cannot be declared as a matter of law that the custodian was guilty of negligence because she did not know the city's custom to dig back into the sand until the overhanging bank was in danger of falling.

The judgment should be reversed, and a new trial granted, costs to abide the event.

HIRSCHBERG and STAPLETON, JJ., concur. JENKS, P. J., and BURR, J., dissent.

